**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Deborah J. Schierholt,

        Plaintiff,               Case No. 2:22-cv-3061

    v.                    Judge Michael H. Watson

Nationwide Mutual Insurance Co.,     Magistrate Judge Jolson

        Defendant.

## OPINION AND ORDER

Nationwide Mutual Insurance Co. ("Defendant") moves for judgment on the pleadings on Deborah J. Schierholt's ("Plaintiff") Complaint. ECF No. 7. For the following reasons, the motion is **GRANTED**.

### I.    FACTS[1]

Plaintiff, age 62 at the time of filing the Complaint, began working for Defendant in 2009 as an executive assistant. Compl. ¶ 8, ECF No. 1. Plaintiff most recently worked in Defendant's Project Delivery Services Department. *Id.* In August 2020, Plaintiff's department was eliminated in a reduction-in-force. *Id.* Plaintiff's last day of employment was scheduled to be October 30, 2020. *See* Agreement 1, ECF No. 7-1.

Prior to the end of her employment, Plaintiff applied for an executive assistant position in another department (the "Position"). Compl. ¶ 11, ECF No.

---

[1] The Court accepts Plaintiffs' factual allegations as true for the purposes of Defendant's motion. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

1. Based on her resume, experience, and letters of recommendation, Plaintiff was one of the most qualified applicants for the Position. *Id*. ¶ 14. On October 13, 2020, Plaintiff learned that she was not selected for the Position. Pl. Aff. ¶ 8, ECF No. 7-2.

On October 14, 2020, Plaintiff signed a severance agreement (the "Agreement"). Agreement, ECF No. 7-1. Therein, Plaintiff waived all claims—including claims under the Age Discrimination in Employment Act ("ADEA")—that arose before the execution of the Agreement. *Id*. On October 22, 2020, Plaintiff learned that Defendant selected Kelly Lewis ("Lewis") for the Position; Lewis was age 35 at the time, had only one year of prior employment with Defendant, and had no prior experience as an executive assistant. Compl. ¶ 16, ECF No. 1.

## II.    STANDARD OF REVIEW

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (quoting *JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting

*Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of [unlawful conduct]."

*Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to

raise a right to relief above the speculative level . . . on the assumption that all

the allegations in the [pleading] are true (even if doubtful in fact)[.]" *Id.* at 555

(internal citations omitted). At the motion to dismiss stage, a district court must

"construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff."

*Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation

marks and citations omitted). However, the non-moving party must provide

"more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.    ANALYSIS

Plaintiff asserts her claim under the ADEA. Compl. ¶¶ 24–25, ECF No. 1.

However, through the Agreement, Plaintiff waived any ADEA claims that arose

before the execution of the Agreement. Agreement, ECF No. 7-1. The issues,

then, are whether Plaintiff's claim "arose" before she signed the Agreement and,

if so, whether the Agreement is enforceable.

First, the Court addresses a preliminary matter. In a prior Opinion and

Order, the Court observed a discrepancy between the date Plaintiff learned she

did not get the Position as alleged in the Complaint (October 22, 2020) and as

averred in an affidavit attached to Defendant's motion (October 13, 2020). ECF

No. 29. Because that discrepancy might have been dispositive, the Court notified the parties that it would treat the motion for judgment on the pleadings as one for summary judgment and directed the parties to conduct limited discovery on the timing of events. *Id.* Plaintiff responded to the Court's Opinion and Order and explained that she agreed that the date on which she learned she did not get the Position was October 13, 2020. ECF No. 30. As such, the Court will consider October 13, 2023 as the date on which Plaintiff learned she did not get the Position.

## A. When did Plaintiff's claim arise?

The ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA protects individuals forty years of age or older. 29 U.S.C. § 631(a).

Plaintiff argues that her ADEA claim arose when she learned that a younger person was hired for the Position, not when Plaintiff learned she did not get the Position. Resp., ECF No. 8. Plaintiff argues that she could not have known there was any basis for thinking Defendant acted in a discriminatory manner until she learned that a younger person was hired. *Id.* Therefore, according to Plaintiff, her ADEA claim "arose" after she signed the Agreement. *Id.*

Any argument that Plaintiff's ADEA claim arose on the date she learned a younger candidate got the position fails. An ADEA claim "accrues when [the

plaintiff] learns of the actual injury (*i.e.,* an adverse employment action), not when [the plaintiff] suspects a legal wrong." *Russell v. Metro. Nashville Pub. Sch.*, No. 3-11-0536, 2012 WL 3241664, at *2, n. 3 (M.D. Tenn. Aug. 7, 2012); s*ee also Giambrone v. Spalding & Evenflo Co.*, 966 F.2d 1452 (Table) (6th Cir. 1992) ("[A] plaintiff's cause of action accrues under the ADEA when he is notified of impending termination[.]" (citing cases)); *Taylor v. Battelle Columbus Lab'ys*, 680 F. Supp. 1165, 1170 (S.D. Ohio 1988) ("It is now well settled that a cause of action under the ADEA accrues when the employee receives a notice of termination . . . ." (cleaned up)).

Applied here, Plaintiff's claim accrued on October 13, 2023, the day she learned she did not get the Position. Plaintiff signed the Agreement on October 14, 2020. Agreement, ECF No. 7-1. Accordingly, Plaintiff's claim arose before the Agreement, and, therefore, Plaintiff waived her ADEA claim with the Agreement.

Relatedly, Plaintiff also argues that the date her claim arose should be tolled by the equitable doctrine of fraudulent concealment. The fraudulent concealment doctrine tolls a limitations period "where a defendant impermissibly conceals its wrongdoing from the plaintiff." *Lutz v. Chesapeake Appalachia, LLC*, 807 F. App'x 528, 530 (6th Cir. 2020) (citing *Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 278–79 (Ohio 2006)). To toll the statute of limitations based on fraudulent concealment, a plaintiff must show "(1) a factual misrepresentation, (2) that the misrepresentation is misleading, (3) that the misrepresentation

induced actual reliance that was reasonable and in good faith, and (4) that it caused detriment to the relying party." *Lutz*, 807 F. App'x, at 530–31 (citing cases).

Here, equitable tolling based on fraudulent concealment is unwarranted. Plaintiff fails to allege any "affirmative acts of concealment," which is a "prerequisite for equitable tolling." *Hamilton Cty. Bd. of Comm'rs. v. National Football League*, 491 F.3d 310, 318 (6th Cir. 2007). Examples of such affirmative acts include "hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music Inc. v. Diamond Time Ltd.,* 371 F.3d 883, 891 (6th Cir. 2004). "[M]ere silence or unwillingness to divulge wrongful activities is not sufficient." *Helmbright v. City of Martins Ferry, Ohio*, 61 F.3d 903 (Table) (6th Cir. July 26, 1995).

Here, Plaintiff does not allege that Defendant took any affirmative action to conceal that it hired a younger candidate for the Position. Instead, Plaintiff alleges only that she did not, and could not, have known that Defendant hired a younger person for the Position before signing the Agreement and that Defendant knew that Plaintiff did not, and could not, know the same. Compl. ¶¶ 18–19, ECF No. 1. In other words, Plaintiff alleges only that Defendant was "merely silent" or "unwilling to divulge wrongful activities." *Helmbright*, 61 F.3d 903 (Table). That is insufficient to plead fraudulent concealment; therefore, tolling the accrual date is inappropriate here.

In sum, Plaintiff's ADEA claim arose before she signed the Agreement, and equitable tolling is inapplicable here.

## B.    Is the Agreement enforceable?

Plaintiff argues that even if her claim arose before signing the Agreement, she was fraudulently induced into signing it, and, therefore, it is not an enforceable release of her claim.  Resp., ECF No. 8.

As an initial matter, the state common law doctrine of fraudulent inducement likely does not apply to ADEA claims.  *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998).  As the Supreme Court has explained, the Older Workers Benefit Protection Act ("OWBPA") "sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law." *Id*.  Thus, the "OWBPA governs the effect under federal law of waivers or releases on ADEA claims and incorporates no exceptions or qualifications," and forecloses state common law arguments about the validity of the release, "notwithstanding how general contract principles would apply to non-ADEA claims." *Id*.

Consider, then, the OWBPA's requirements.  The OWBPA sets out the following requirements for a valid release of an ADEA claim:

> (1) The release must be written in a manner calculated to be understood by the employee signing the release, or the average individual eligible to participate;

> (2) the release must specifically refer to the ADEA;

(3) the release must not purport to encompass claims that may arise after the date of signing;

(4) the employer must provide consideration for the ADEA claim above and beyond that to which the employee would otherwise already be entitled;

(5) the employee must be advised in writing to consult with an attorney;

(6) the employee must be given at least 21 or 45 days to consider signing, depending on whether the incentive is offered to a group;

(7) the release must allow the employee to rescind the agreement up to 7 days after signing; and

(8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible (or selected) for the program, and the corresponding information relating to employees in the same job titles who were not eligible (or not selected) for the program.

*Howlett v. Holiday Inns, Inc.*, 120 F.3d 598, 600 (6th Cir. 1997) (paraphrasing 29 U.S.C. § 626(f)).

Plaintiff makes no argument that the Agreement fails to meet any of these statutory requirements. From the Court's review of the Agreement, the Court concludes that the Agreement complies with the OWBPA requirements and, therefore, is a valid release.

Even if the fraudulent inducement doctrine applied to an ADEA claim, it would not invalidate the Agreement here. The only allegations in the Complaint that seem to relate to Plaintiff's fraudulent inducement claim are: (1) that Plaintiff could not have discovered that a younger candidate was chosen for the Position before Plaintiff signed the Release; and (2) that Defendant knew Plaintiff could

not have learned the same. Compl. ¶¶ 18–19, ECF No. 1. It seems, then, that Plaintiff argues fraudulent omission, rather than a fraudulent affirmative statement.

When a plaintiff "alleges fraud by concealment or omission, the plaintiff must also allege an underlying duty to speak for the nondisclosure to be actionable." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 646 (N.D. Ohio 2014) (cleaned up). The general rule is that parties to a contract do not have a duty to disclose, absent special circumstances including: "(1) when a fiduciary relationship exists between the parties, (2) where a special trust or confidence is understood between the parties, and (3) where disclosure of facts is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Equal Just. Found. v. Deutsche Bank Tr. Co. Americas*, No. C2-04-228, 2006 WL 2795211, at *6 (S.D. Ohio Sept. 27, 2006) (internal quotation marks and citations omitted).

Here, Plaintiff does not allege that her situation fits any of these exceptions. First, Plaintiff does not allege that the parties had anything more than an "ordinary relationship of employer and employee" that might give rise to such a duty. *Swartz v. Oracle Corp.*, 787 F. Supp. 2d 686, 693 (N.D. Ohio 2011) (citing Ohio law) (explaining that an "ordinary" employer-employee relationship did not create a fiduciary relationship). Next, Plaintiff has not alleged that any further disclosures were "necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Equal Just. Found.*,

2006 WL 2795211, at *6 (internal quotation marks and citations omitted). Thus, Plaintiff has not alleged that Defendant owed her any duty to disclose whom Defendant hired for the Position and, by extension, Plaintiff has not alleged that Defendant fraudulently induced her into signing the Agreement.

In sum, the Agreement is valid and enforceable.

## IV. CONCLUSION

For these reasons, Defendant's motion is **GRANTED**; Plaintiff's claim is **DISMISSED WITHOUT PREJUDICE**. The Clerk shall enter judgment for Defendant and close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**